1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                           EASTERN DISTRICT OF CALIFORNIA

10

11   NATIONWIDE MUTUAL INSURANCE            No.  2:14-cv-2305-MCE-CKD
     CO., an Ohio corporation,
12
                 Plaintiff,
13                                          **MEMORANDUM AND ORDER**
           v.
14
     BUSHNELL LANDSCAPE
15   INDUSTRIES INC., a California
     corporation,
16
                 Defendant.
17

18

19        Plaintiff Nationwide Mutual Insurance Company ("Plaintiff") brings claims against

20   Bushnell Landscape Industries Inc. ("Defendant") alleging breach of contract.

21   Specifically, Plaintiff alleges that Defendant is in breach of a compromise agreement that

22   resolved an insurance coverage dispute between the parties.  Presently before the Court

23   is Plaintiff's Motion for Partial Summary Judgment.  ECF No. 16.  For the following

24   reasons, Plaintiff's Motion is DENIED.[1]

25   \\\

26   \\\

27   _____

28        [1] Because oral argument would not have been of material assistance, the Court ordered this
     matter submitted on the briefs.  E.D. Cal. Local Rule 230(g).

                                              1

1

2

**BACKGROUND**[2]

3       Between 2007 and 2009, Defendant suffered significant losses to plants in its

4   nursery stock caused by contaminated additives in potting soil.  The losses were caused

5   by salt and other chemicals contained in rice hulls purchased from Grover Landscape

6   Services ("Grover").  Defendant had purchased insurance from Plaintiff under two

7   separate policies.  The first policy covered the period from May 31, 2007 to May 31,

8   2008 ("2007 policy") and provided personal property blanket coverage for Defendant's

9   nursery stock.  The second policy covered the period from May 31, 2008 to May 31,

10  2009 ("2008 policy") and did not provide blanket coverage for the nursery stock.

11  Defendant submitted claims to Plaintiff under both the 2007 and 2008 policies.  Plaintiff

12  denied the claims under both policies, stating that the loss fell under a specified

13  exclusion in the 2007 policy and did not result from one of the specifically enumerated

14  risks covered under the 2008 policy.  In May 2009, Defendant sued Grover for damages

15  caused to its plant stock.  Opp. to Pl.'s Stmt. of Undisputed Facts, ECF No. 22 at ¶4.

16      Defendant challenged Plaintiff's denial of the insurance claims and on February

17  10, 2010 the parties met to discuss denied claims.  At the meeting, Defendant

18  estimated that the total loss from 2007 to 2009 was approximately $1.2 million, and

19  alleged that half that amount, $600,000, was needed to compensate Defendant for its

20  2007 losses.  The next day, Defendant's attorney sent a letter to Plaintiff's attorney

21  summarizing the meeting and confirming terms of the tentative agreement.  The letter

22  stated that "the parties agreed, for purposes of settlement negotiations, to accept the

23  figure of $600,000 for that portion of the loss of the nursery stock during the policy period

24  of 5/31/2007 – 5/31/2008."  The letter also stated that "the goal of the agreement was to

25  ensure that [Defendant] is to be made 'whole' by receiving at least $600,000 from

26  [Plaintiff] and from the pending action [against Grover] . . . ."  Plaintiff's attorney

27  _____

28  [2] Unless otherwise indicated, the following facts are taken from Defendant's Opposition to the
Motion.  ECF No. 22.

responded by noting that "[w]e are in agreement with the terms as you have laid them out."

The parties exchanged several emails discussing details of the tentative agreement. Plaintiff insisted on the ability to monitor and approve Defendant's litigation expenses with Grover. To clarify what expenses Plaintiff wished to monitor, Defendant's attorney suggested that these costs not include routine litigation expenses, but perhaps just expert witness costs. Plaintiff's attorney responded that Defendant could recover "attorney's fees and costs expended 'on top' of any sharing something [sic] he would NOT be able to recover in the underlying litigation . . . ."

The parties subsequently exchanged drafts of the compromise agreement. Plaintiff's attorney sent a draft to Defendant's attorney with the following language regarding the amount Defendant would retain from pending litigation against Grover:

> (2)(b) Out of any proceeds, by judgment, settlement, or otherwise, which Bushnell may receive from the Grover action, Bushnell may retain the first $300,000, together with an amount which will fully compensate Bushnell for all legal fees and costs incurred in the Grover action, free and clear of any claim or right of Nationwide.

This language was subsequently modified in the final agreement to include the phrase "associated with the loss" as follows:

> (2)(b)  Out of any proceeds, by judgment, settlement, or otherwise, which Bushnell may receive from the Grover action, Bushnell may retain the first $300,000, together with an amount which will fully compensate Bushnell for all legal fees and costs incurred <u>associated with the loss</u> and in the Grover action, free and clear of any claim or right of Nationwide.

(emphasis added). The following sections in the final agreement provided:

> (2)(c)  Out of any proceeds from the Grover action in excess of the first $300,000, together with an amount which will fully compensate Bushnell for all legal fees and costs incurred in the Grover action (hereinafter "Excess Proceeds"), Nationwide will receive 25% of such Excess Proceeds up to a maximum of $300,000.

> (2)(d)  In no event will Nationwide receive any amounts in excess of $300,000.

3

1    Both parties signed the written agreement.  In exchange for avoiding litigation

2    over the claim, Plaintiff paid Defendant $300,000.  In addition to this one-time $300,000

3    payment, the compromise agreement guaranteed to Defendant the first $300,000 of any

4    proceeds from Defendant's litigation against Grover.  The agreement also entitled

5    Defendant to the portion of the Grover litigation proceeds necessary to compensate

6    Defendant for litigation costs.  The compromise agreement labelled any amount above

7    the combination of Defendant's first $300,000 and compensable litigation costs as

8    "excess proceeds."  The agreement entitled Plaintiff to 25% of the excess proceeds, with

9    Plaintiff receiving no more than $300,000.  After reaching the compromise agreement,

10   Defendant won a $1.33 million judgment against Grover in October 2011, which the

11   Court of Appeal upheld.  Opp. to Pl.'s Stmt. of Undisputed Facts, ECF No. 22 at ¶9.

12   Plaintiff brings the present Complaint (ECF No. 1) alleging breach of contract,

13   fraud, and seeking rescission of the compromise agreement.  Of the $1.33 million

14   judgment, Plaintiff alleges that Defendant is entitled to the first $300,000, plus $221,599

15   in compensable litigation costs.  Plaintiff alleges that Defendant has paid none of the

16   25% of the excess proceeds to which Plaintiff is entitled.  Plaintiff calculates that they are

17   owed $221,195 under the compromise agreement.[3]  Defendant rejects this calculation,

18   stating that their compensable litigation costs were significantly higher than Plaintiff

19   alleges.

20

21

22                                    **STANDARD**

23

24   The Federal Rules of Civil Procedure provide for summary judgment when "the

25   movant shows that there is no genuine dispute as to any material fact and the movant is

26   entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v.

27   Catrett, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to

28   [3] Plaintiff's calculation includes interest payments Defendant received as part of the Grover litigation judgment.

4

1    dispose of factually unsupported claims or defenses.  Celotex, 477 U.S. at 325.

2        Rule 56 also allows a court to grant summary judgment on part of a claim or

3    defense, known as partial summary judgment.  See Fed. R. Civ. P. 56(a) ("A party may

4    move for summary judgment, identifying each claim or defense—or the part of each

5    claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v.

6    Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995).  The standard that applies to a

7    motion for partial summary judgment is the same as that which applies to a motion for

8    summary judgment.  See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic

9    Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary

10   judgment standard to motion for summary adjudication).

11       In a summary judgment motion, the moving party always bears the initial

12   responsibility of informing the court of the basis for the motion and identifying the

13   portions in the record "which it believes demonstrate the absence of a genuine issue of

14   material fact."  Celotex, 477 U.S. at 323.  If the moving party meets its initial

15   responsibility, the burden then shifts to the opposing party to establish that a genuine

16   issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith

17   Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.

18   253, 288-89 (1968).

19       In attempting to establish the existence or non-existence of a genuine factual

20   dispute, the party must support its assertion by "citing to particular parts of materials in

21   the record, including depositions, documents, electronically stored information,

22   affidavits[,] or declarations . . . or other materials; or showing that the materials cited do

23   not establish the absence or presence of a genuine dispute, or that an adverse party

24   cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The

25   opposing party must demonstrate that the fact in contention is material, i.e., a fact that

26   might affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby,

27   Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and

28   Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  The opposing party must also

1  demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is

2  such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>,

3  477 U.S. at 248.  In other words, the judge needs to answer the preliminary question

4  before the evidence is left to the jury of "not whether there is literally no evidence, but

5  whether there is any upon which a jury could properly proceed to find a verdict for the

6  party producing it, upon whom the <u>onus</u> of proof is imposed." <u>Anderson</u>, 477 U.S. at 251

7  (quoting <u>Improvement Co. v. Munson</u>, 81 U.S. 442, 448 (1871)) (emphasis in original).

8  As the Supreme Court explained, "[w]hen the moving party has carried its burden under

9  Rule [56(a)], its opponent must do more than simply show that there is some

10  metaphysical doubt as to the material facts." <u>Matsushita</u>, 475 U.S. at 586.  Therefore,

11  "[w]here the record taken as a whole could not lead a rational trier of fact to find for the

12  nonmoving party, there is no 'genuine issue for trial.'" <u>Id.</u> 87.

13       In resolving a summary judgment motion, the evidence of the opposing party is to

14  be believed, and all reasonable inferences that may be drawn from the facts placed

15  before the court must be drawn in favor of the opposing party.  <u>Anderson</u>, 477 U.S. at

16  255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

17  obligation to produce a factual predicate from which the inference may be drawn.

18  <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>,

19  810 F.2d 898 (9th Cir. 1987).

20

21                                   **ANALYSIS**

22

23       Plaintiff argues that the known and undisputed facts require Defendant to pay

24  Plaintiff an amount determinable under the compromise agreement formula.[4]

25  Defendant, however, argues that Plaintiff misconstrues the terms of the compromise

26

27  _____

[4] As an initial matter, although Plaintiff's Motion is captioned as a Motion for Partial Summary Judgment, Plaintiff does not ask the Court for judgment on specific claims, but for judgment as a whole. Pl.'s Mot.Summ. J. 1, 9.  This does not affect the Court's analysis or order.

28

1  agreement and severely underestimates that amount of reimbursable legal fees and

2  costs to which Defendant is entitled.  In defense of this view, Defendant points to

3  Paragraph (2)(b) of the compromise agreement, which Defendant argues provides for

4  broad compensation of "legal fees and costs incurred associated with the loss and in the

5  Grover action."  In addition, Defendant argues that the excess proceeds calculation

6  should only consider the awarded damages that compensate Defendant for losses

7  occurring during the 2007 policy period.  In support of this view, Defendant argues that

8  the compromise agreement was limited in scope to the disputed 2007 policy, and that

9  the parties did not intend for the excess proceeds calculation to consider damages

10  awarded for losses outside of the 2007 period.

11       Under California law, the interpretation of a written contract is a matter of law for

12  the court even though questions of fact are involved.  Southland Corp. v. Emerald Oil

13  Co., 789 F.2d 1441, 1443 (9th Cir. 1986).  Summary judgment is appropriate when the

14  contract terms are clear and unambiguous, even if the parties disagree as to their

15  meaning.  United States v. King Features Entm't, Inc., 843 F.2d 394, 398 (9th Cir. 1988).

16  California recognizes two forms of ambiguity: patent and latent.  A patent ambiguity

17  appears on the face of the text itself, while a latent ambiguity arises from extrinsic

18  evidence that casts doubt on the plain meaning of the text.  See Supervalu, Inc. v.

19  Wexford Underwriting Managers, Inc., 175 Cal. App. 4th 64, 73-74 (2009).  California's

20  liberal parol evidence rule permits consideration of extrinsic evidence to explain the

21  meaning of the terms of the contract even when the meaning appears unambiguous.

22  Foad Consulting Group v. Musil Govan Azzalino, 270 F.3d 821, 826 (9th Cir. 2001).

23       In the present case, an obvious patent ambiguity precludes summary judgment.

24  The central dispute in this case is over what costs are reimbursable to Defendant from

25  the Grover litigation proceeds.  The type and amount of reimbursable costs are set forth

26  in Paragraphs 2(b) and 2(c) of the compromise agreement.  These Paragraphs both set

27  forth formulas for calculating reimbursable costs, but not the same formula.    Paragraph

28  2(b) provides that Defendant will be compensated "for all legal fees and costs incurred

7

1   associated with the loss and in the Grover action."  However, Paragraph 2(c) provides

2   that Defendant will be compensated "for all legal fees and costs incurred in the Grover

3   action."  Paragraph 2(b) clearly contains an additional term governing the type of

4   reimbursable costs under the formula:  the "associated with the loss" language.  This

5   additional term creates a manifest patent ambiguity in the formula for establishing

6   reimbursable costs.

7          Defendant argues that the additional term functions to provide reimbursement for

8   non-traditional costs incurred during preparation for litigation.  Mr. Bushnell, Defendant's

9   president, stated that the "associated with the loss" language was meant to include non-

10  ordinary business expenses:

11                  [t]he legal fees would be my attorney's cost, any court cost,
                    any other cost that he incurred with expert witness, et cetera,
12                  his reproduction cost, and any other miscellaneous cost that
                    he incurred that he billed me for.  And then – and the cost
13                  incurred associated with the loss would be would be any cost
                    that I incurred that I would not ordinarily incur doing ordinary
14                  business, that they were associated – that they were incurred
                    because of the Grover action.
15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

1  Bushnell Dep. 112:21–113:4, Dec. 17, 2015, ECF No. 22, Ex. C.  Plaintiff implicitly

2  argues that these non-ordinary business expenses were not reimbursable under the

3  contract, and that "legal fees and costs" should be understood to include only attorney,

4  expert, and court fees.  Pl.'s Stmt. of Undisputed Facts, ECF No. 16 at ¶13.  This

5  ambiguity presents a clear factual dispute that precludes summary judgment, and

6  Plaintiff's Motion is accordingly DENIED.[5]

7

8                                **CONCLUSION**

9

10     Plaintiff's Motion for Partial Summary Judgment (ECF No. 16) is DENIED.

11     IT IS SO ORDERED.

12  Dated:  April 5, 2016

13

14

15     _____
       MORRISON C. ENGLAND, JR., CHIEF JUDGE
16     UNITED STATES DISTRICT COURT

17

18

19

20

21

22

23

24

25

26

27  [5] The parties also dispute whether or not the excess proceeds calculation should be based on all of the Grover litigation proceeds or just the proceeds that compensate Defendant for losses occurring during the 2007 policy period.  Because this issue does not affect the outcome of the present motion, the

28  Court does not address it here.